UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


RUSSELL PEELER,                      :
          Plaintiff,                 :
                                     :
     v.                              :     Case No. 3:15-cv-169(DJS)
                                     :
FEDERAL BUREAU OF INVESTIGATION, :
          Defendant.                 :


RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #15]

     Plaintiff, Russell Peeler, commenced this action by
complaint against the Federal Bureau of Investigation.  He
alleges that the defendant improperly denied his request under
the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for
records associated with his personal pager number.  The defendant
has filed a motion for summary judgment.  For the reasons that
follow, the defendant's motion is granted.


I.   Standard of Review

     A motion for summary judgment may be granted only where
there are no issues of material fact in dispute and the moving
party is entitled to judgment as a matter of law.  Rule 56(a),
Fed. R. Civ. P.; *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.
2009).  The moving party may satisfy its burden "by showing—that

is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  The nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

II.  <u>Facts</u>

The Federal Bureau of Investigation ("FBI"), a bureau of the Department of Justice, provides, *inter alia*, leadership and criminal justice services to federal, state and municipal agencies.  Incident to these services, the FBI maintains investigative and intelligence files on criminal activity.

The plaintiff currently is incarcerated following his state court conviction for capital murder of a mother and her child. He also was convicted of the murder of another individual and related charges.  Various telephone calls were the subject of

testimony in the plaintiff's state court criminal trials.  The
plaintiff contends that certain calls did not occur and has
attempted to obtain telephone record information from the FBI
under the FOIA.

During the course of prior FOIA litigation,[1] the plaintiff
received a copy of a 1A envelope[2] containing references to
various subpoenas including a subpoena to AIMS Communication.
The plaintiff assumes that the envelope contained, *inter alia*,
records obtained pursuant to the subpoena to AIMS Communication,
his personal pager service provider.

By letter dated April 21, 2014, the plaintiff requested
information on all calls to his personal pager during the months
of December 1998 and January 1999.  He stated that the FBI had
served a subpoena on AIMS Communication and provided a case
number, i.e., 267C-NH-38899. The FBI responded on May 2, 2014,
advising the plaintiff that he had not provided adequate
information to enable the FBI to perform an adequate search of
the Central Records System.  The FBI sent the plaintiff a form
seeking additional information and requesting that the form be
returned within thirty days.  The FBI also assigned the request
FOIPA number 1261652-000.

_____

[1] Peeler v. United States Dep't of Justice, No. 3:13-cv-1323 (JAM) (D.
Conn. Jan. 30, 2015).

[2] A "1A envelope" is a sub-file, often containing items having
evidentiary value, that is stored with the main file of each
investigative matter. (Doc. # 15-2, at 10, ¶33). The main FBI file
pertaining to the plaintiff is file 267C-NH-38899.

By letter dated May 13, 2014, the plaintiff provided additional information.  He stated that he was seeking all information relating to his pager that the government had obtained in response to the subpoena to AIMS Communication.  The FBI acknowledged receipt of the request and informed the plaintiff that it was conducting a search for the requested information.

By letter dated July 11, 2014, the FBI informed the plaintiff that it had located 1,127 pages of records that were potentially responsive to his FOIA request, and advised the plaintiff of the cost for duplication of those pages and the formats in which the information could be provided to him.  The plaintiff also was told that, if he wished, he could reduce the scope of his request, which might reduce duplications costs.  In response, the plaintiff informed the FBI that he wished to narrow his request to pager calls for January 1999 only.  He agreed to pay duplication fees and asked that the information be sent to him on a CD.

In August 2014 the FBI told the plaintiff that it had located 1,006 pages of records that were potentially responsive to the narrowed request.  The FBI also explained that the plaintiff could receive the information on CD only if he provided an alternate address, as FBI policy does not allow information to

be sent to a prison on a CD.[3] The FBI further advised the plaintiff that the duplication costs referenced in the letter were only an estimate, since some of the information in the identified pages might not be responsive to his specific request.

The plaintiff requested information on the status of his request in October 2014.  By letter dated November 12, 2014, the plaintiff appealed the alleged failure to respond to his request to the Department of Justice Office on Information Policy ("OIP").  In December 2014 OIP acknowledged the receipt of the appeal and assigned it an appeal number.  By letter dated January 14, 2015, OIP advised the plaintiff that Department of Justice regulations provide for an appeal to the OIP only after there has been an adverse determination by one of the Department's component agencies. OIP further informed the plaintiff that although he was authorized to file a lawsuit when an agency failed to respond to a request within the statutory time period, OIP had contacted the FBI and learned that the plaintiff's request was being processed.  OIP closed the appeal and advised the plaintiff that he could refile his appeal if he was dissatisfied with the FBI's final response to his request.

The plaintiff submitted a second appeal by letter dated December 15, 2014.  OIP responded by letter dated January 15,

---

[3] Although the plaintiff disagrees that he was informed that FBI policy precludes sending CD's to correctional facilities, the FBI's letter clearly states the FBI policy.  *See* Hardy Decl., Def.'s Mem. Ex. G, Doc. #15-3 at 16.

2015, wherein an appeal number was assigned to the second appeal request.  On February 1, 2015, the plaintiff commenced this lawsuit.  By letter dated February 12, 2015, OIP informed the plaintiff that the second appeal was duplicative of the first appeal and then closed the second appeal.

By letter dated February 17, 2015, the FBI reported that upon review of the 1,006 pages of potentially responsive records, it was unable to identify any records specific to the plaintiff's request regarding the subpoena served on AIMS Communication for calls to the designated pager number during January 1999.  The letter also included a notification that "Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA," and that "[t]his response is limited to those records that are subject to the requirements of the FOIA." (Doc. # 15-3, at 33). The FBI also explained that this was a standard notification and should not be interpreted as an indication that excluded records do, or do not, exist.

On March 4, 2015, the plaintiff filed a third appeal with OIP. He disputed the representation by the FBI that it was unable to identify responsive records to the subpoena that had been served on AIMS Communication and also challenged the FBI's statement that Congress had excluded three categories of law enforcement and national security records from disclosure under

FOIA.  OIP acknowledged receipt of the appeal and assigned it an appeal number.  By letter dated May 1, 2015, OIP informed the plaintiff that it had become aware of this litigation and indicated that appeals are not acted upon if the underlying request becomes the subject of litigation.  OIP stated that it was closing the appeal for this reason.

III. <u>Discussion</u>

In his amended complaint, the plaintiff alleges that the FBI has violated FOIA provisions by refusing to provide records pertaining to the plaintiff's pager for the month of January 1999.

Title 5, Section 552(a)(4)(B), allows the district court to order production of any agency records improperly withheld. Thus, "federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records" and may be invoked only "if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150 (1980) (internal quotation marks omitted).  Although the Supreme Court has framed these issues in jurisdictional terms, the trend in this and other circuits is to analyze these issues under Rule 56, Fed. R. Civ. P.  *See McKanney v. Department of the Navy*, No. 13 Civ. 1535(KBF), 2013 WL 5913380, at *3 (S.D.N.Y. Nov. 4, 2013).

The defendant FBI contends that it is entitled to summary judgment on the basis that it conducted a search reasonably calculated to uncover all relevant documents and failed to find any such documents. The plaintiff argues in response that the search conducted by the FBI was inadequate to identify the requested records.

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The adequacy of the search is measured by the methods employed, not the results obtained. *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency may show that a search was adequate by providing a reasonably detailed affidavit from an agency official.  Such affidavits are "accorded a presumption of good faith." *Carney v. U.S. Department of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)(internal quotation marks omitted).  The presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Grand Central Partnership*, 166 F.3d at 489 (internal quotation marks omitted).

FBI Section Chief David M. Hardy has submitted a declaration

describing the search for the requested records. (Doc. #15-2).
He notes that, in response to the plaintiff's previous FOIA
request and associated lawsuit, the FBI had conducted a search of
the general indices to the FBI's Central Records System ("CRS")
to identify all potentially responsive investigative files
relating to Russell Peeler during the time period of January
1999.  The FBI's search was thorough, using phonetic sounds and
alternate spellings of the plaintiff's first and last names, as
well as the plaintiff's date of birth.  The search revealed "one
large multi-subject main investigative file, 267C-NH-38899,"
which might contain records responsive to the plaintiff's
request. (Doc. #15-2, at 10 n.7).  This is the same file number
referenced by the plaintiff in the FOIA request underlying this
action.

Having already conducted an exhaustive search in connection
with the plaintiff's previous FOIA request, the FBI reasonably
concluded that, with regard to the plaintiff's April 21, 2014
request, any potentially responsive material would be located
within investigative file 267C-NH-38899. For that reason the FBI
focused its search on that investigative file, including  all
related sub-files.  The FBI was not required to repeat the
initial search of the general indices to the CRS.  *See Amnesty
International USA v. CIA*, 728 F. Supp. 2d 479, 498 (S.D.N.Y.
2010) ("[A]n agency need only pursue leads that raise red flags

-9-

pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request.") (internal quotation marks omitted).

During the search, the FBI located the 1A envelope referenced by the plaintiff in his request. The envelope listed various subpoena-related entries for case file 267C-NH-38899. Because this was a multi-subject investigation, the 1A envelope could contain items related to any of the subjects of the investigation, not just the plaintiff.  The 1A envelope pertaining to this investigation lists various subpoenas.  There is no indication that every subpoena listed on the envelope was served, however, or that records were received in response to every subpoena that was served.[4]  In his declaration, Section Chief Hardy attests that "even though an item may be listed [on a 1A envelope], that is not a guarantee that the item was ever served or that a response was returned to the FBI." (Doc. #15-2, at 10, ¶33).

The FBI searched the plaintiff's file, including all other related subfiles, by hand but could not locate any records

_____

[4] Indeed, the evidence before the Court suggests that no records were received in response to the AIMS Communication subpoena.  The entry on the 1A envelope states:  "ORIGINAL SUBPOENA AIMS COMMUNICATION." (Doc. # 23-4, at 2).  Entries relating to other subpoenas appear to describe them as executed, for example, "ORIGINAL EXEC SUBPOENA BEEPER LAND" and "ORIG EXEC SUBPOENA PAGING NET NY." (Id.). In opposition to the motion for summary judgment, the plaintiff has included excerpts from the transcript of his criminal trial at which persons from the companies for which "EXEC" is noted on the 1A envelope testified regarding records from their respective companies.  See, e.g., testimony of Al Sultan from Beeper Land and testimony of William Castillo of Paging Network of New York. (Doc. # 23-5, at 2 and 14).

relating to his pager number from January 1999. Thus, the FBI reported that no records were found.  As Section Chief Hardy reports that no responsive records were found, the Court need not address the second part of the test, that any withheld records fall within an exception.

The plaintiff has presented no evidence in opposition to the motion for summary judgment suggesting that the FBI's search was inadequate.  *See Moayedi v. U.S. Customs & Border Protection*, 510 F. Supp. 2d 73, 80 (D.D.C. 2007)(quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) ("if searching only one database would be 'reasonably calculated to uncover all relevant documents,' then such search may be deemed adequate."). The plaintiff's unsupported belief that records must have been received in response to the AIMS Communication subpoena is insufficient to render the search inadequate.  *See Ray v. FBI*, 441 F. Supp. 2d 27, 32 (D.D.C. 2006) ("The fact that the FBIHQ's search did not meet plaintiff's expectations does not lead inevitably to the conclusion that its search was inadequate"). The Court concludes that the FBI conducted an adequate search in response to the plaintiff's FOIA request.

IV.  Conclusion

For the reasons stated above, the defendant's motion for summary judgment [**Doc. #15**] is **GRANTED**.

The Clerk is directed to enter judgment and close this case.


SO ORDERED this 23rd day of February, 2016.



       /s/ DJS
       Dominic J. Squatrito
       United States District Judge